IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MARIA MURGUÍA**                                                                                    **PLAINTIFF**

**V.**                                        **CASE NO. 5:20-CV-5221**

**CHARISSE CHILDERS, in her official
Capacity as Director of the Arkansas
Division of Workforce Services**                                                        **DEFENDANT**

## MEMORANDUM OPINON AND ORDER
## DENYING MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendant Charisse Childers and a Memorandum Brief in Support (Docs. 9 & 10). Plaintiff Maria Murguía filed a Response in Opposition (Doc. 15) and Defendant filed a Reply (Doc. 22). The Motion (Doc. 9) is now ripe for decision. For the reasons explained below, it is **DENIED**.

### I. BACKGROUND

### A. Procedural Background

The Arkansas Division of Workforce Services ("ADWS" or "DWS") administers the state's unemployment benefit program, also known as unemployment insurance or "UI." The federal government provides a portion of the funding for state UI programs and imposes requirements on those programs as a condition of federal funding. The Secretary of Labor is the federal official charged with oversight of state compliance with the federal requirements. *See* 42 U.S.C. § 503. Pursuant to this authority, the Secretary has promulgated regulations that govern the federal-state UI program. These guidelines include expectations for timeliness of processing and payment and requirements for ensuring that applicants with limited English proficiency are provided with adequate service. For example, in assessing state compliance with the requirement that UI

1

payments be timely made, the Secretary of Labor requires that 93% of all initial payments be made within 35 days of the end of the first compensable week and that 87% of initial payments be made within 21 days. *See* 20 C.F.R. § 640.5. The Department of Labor also instructs that "[s]tate UI agencies should provide adequate notice to [limited-English-proficient] individuals of the existence of interpretation and translation services and that they are available free of charge." Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 02-16, at 8 (Oct. 1. 2015). The same Letter also instructs that vital documents should be translated into languages spoken by a significant portion of the population to be served, and that "UI agency staff should be trained to identify language access barriers and provide affected claimants alternative access options." *Id.* at 10.

In response to the COVID-19 pandemic, Congress created the Pandemic Unemployment Assistance ("PUA") program, which provides benefits for individuals whom the pandemic has prevented from working but who do not qualify for traditional UI. *See* 15 U.S.C. § 9021. An individual cannot be considered for PUA until it has been determined that she is not eligible for UI. *See* Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20, Attachment 1, at I-9 (Apr. 5, 2020). When an individual is deemed ineligible for UI, however, the state agency is required to determine whether that individual may be eligible for PUA and provide her notice of her eligibility and instructions on how to apply for PUA. *See* Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 16-20 Change 1, Attachment 1, at I-2 (Apr. 27, 2020).

Arkansas state laws and regulations pertaining to the UI program do not impose any specific requirements defining promptness or language access. State law does provide that DWS will notify the claimant's last employer and all base period employers of a UI claim and that if such employers fail to respond within 10 and 15 days respectively, they will be deemed to have waived the right to respond. *See* Ark. Code Ann. §§ 11-10-505(a)(2)(A) & 11-10-521(b)(2)(A).

### B. Factual Background

Plaintiff Maria Murguía is an immigrant from Mexico and a lawful permanent resident of the United States who resides in Fayetteville, Arkansas. She has limited proficiency in English. Ms. Murguía has worked for many years as a cleaner and housekeeper. In November 2019, Ms. Murguía left a job at Molly Maid and began working at a Holiday Inn. In mid-March 2020, Ms. Murguía was laid off from Holiday Inn because the Covid-19 pandemic reduced the hotel's staffing needs. Ms. Murguía alleges that the following week, she traveled to DWS's Fayetteville office to apply for UI. She brought her daughter to help her communicate in English. Ms. Murguía alleges that even though it was clear that she had limited proficiency in English, no one at DWS offered her a translator, nor did she see any signs informing her that translation services were available. Since this first visit in March 2020, Ms. Murguía has filed a weekly UI claim using the DWS call-in line.

On June 10, 2020, Ms. Murguía received a Notice of Agency Determination that referenced Molly Maid as her employer and denied her UI benefits, claiming that she was not eligible because she left her job in November 2019 to take another job. The substantive information in the Notice was in English, though it contained an admonition

3

in Spanish that the notice was important and the recipient should seek translation assistance from the local DWS office. *See* Doc. 2-1. Ms. Murguía appealed the Notice and on July 16, 2020, received a Notice of Telephone Hearing. This Notice provided the date and time of the hearing and a single-spaced page of instructions and was written only in English. *See* Doc. 2-2. Ms. Murguía alleges that she withdrew her request for appeal because she did not know how to participate in the hearing and because she believed DWS had made a mistake regarding her employer. When her first claim was rejected in June 2020, Ms. Murguía alleges that she was not informed that she might be eligible for PUA.

On August 25, 2020, Ms. Murguía returned to the DWS Fayetteville office with her daughter and again applied for UI. At that time, Ms. Murguía spoke with a DWS employee who said Ms. Murguía had incorrectly listed her employer as Molly Maid and directed her to return with pay stubs from her job at Holiday Inn. The next day, Ms. Murguía and her daughter returned with the requested pay stubs and spoke with the same employee. At that time, however, Ms. Murguía alleges that the employee refused to accept the pay stubs and told Ms. Murguía that she could not file another application for unemployment benefits until she worked another job for thirty days or more. Ms. Murguía alleges that the employee refused to help her in any way and was hostile and unfriendly. As with her first visit, Ms. Murguía was not offered translation services or informed that such services were available.

The next month, Legal Aid of Arkansas contacted DWS on Ms. Murguía's behalf, and she was put in contact with a Spanish-speaking employee to assist her. On September 23, 2020, Ms. Murguía believes that either her previous application was

4

reopened or that a new application was initiated for her. The next week, Ms. Murguía received a Notice of Agency Determination that acknowledged the June determination to have been "issued in error" since it listed the incorrect employer. The Notice indicated that Holiday Inn would be notified of Ms. Murguía's claim and a new determination would be issued. A month later, Ms. Murguía was told that DWS was still waiting for information from Holiday Inn, and the next week she was mailed additional forms to complete. The forms were in English, and the Spanish-speaking employee did not respond to Ms. Murguía's request for assistance, so she completed the forms to the best of her ability and returned them. Since she returned the forms on November 9, Ms. Murguía's UI application has remained pending without update. However, on December 15, 2020, DWS contacted Ms. Murguía by phone to confirm again that she was laid off from her job at Holiday Inn and had not quit and then asked about the immigration status of her coworkers there. When she declined to provide any information, Ms. Murguía alleges that she was told her case would be closed.

Ms. Murguía filed her Complaint before this Court on December 18, 2020, raising three claims against Dr. Childers in her official capacity as the director of DWS. First, Ms. Murguía alleges that Defendant is intentionally discriminating against her as a Spanish-speaking Mexican immigrant, in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d. In particular, Ms. Murguía points to DWS's failure to provide meaningful language access, the hostility of the DWS employee at the Fayetteville office and his refusal to provide service during her August visit, the coercive nature of the questioning about the immigration status of Ms. Murguía's coworkers at Holiday Inn, and the deprivation of benefits from the unexplained delays in processing her UI application.

5

Second, Ms. Murguía brings a claim under the Due Process Clause of the Fourteenth Amendment, alleging that Defendant's failure to provide language access and the delay in making an accurate determination on her application for unemployment benefits amounts to constructive denial without procedural due process. Finally, Ms. Murguía makes a claim under state law for injunctive relief because Defendant's conduct in processing her application is arbitrary, capricious, wantonly injurious, or in bad faith. Defendant has moved to dismiss.

## II. DISCUSSION

Defendant offers three bases on which Ms. Murguía's Complaint should be dismissed. First, Defendant makes two challenges to this Court's subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure—that sovereign immunity bars Ms. Murguía's claim for declaratory judgment, and that the Administrative Procedures Act precludes review of agency adjudications by this Court. Defendant then asserts that each of Ms. Murguía's claims fails to state a claim for which relief can be granted and should be dismissed pursuant to Rule 12(b)(6). The Court takes up each argument in turn and concludes that each one is without merit.

### A. Subject-Matter Jurisdiction

#### 1. Sovereign Immunity

Defendant first asserts that the *Ex parte Young* exception to state sovereign immunity does not apply here because Ms. Murguía seeks a declaratory judgment that is retrospective, not prospective. Defendant does not make clear which claims she believes can be dismissed on this basis. After all, the Supreme Court has recognized that Congress validly and "expressly abrogated States' sovereign immunity against suits

6

brought in federal court to enforce Title VI and provided that in a suit against a State[,] remedies (including remedies both at law and in equity) are available to the same extent such remedies are available" in any other suit. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (cleaned up). Thus, *Ex parte Young* is not relevant to Ms. Murguía's Title VI claim, and she is entitled to seek declaratory and injunctive relief and compensatory damages on that claim.

The Court therefore assumes that Defendant's *Ex parte Young* argument pertains only to Ms. Murguía's procedural due process claim. Defendant argues that Ms. Murguía's requested relief is retrospective because she "seeks to control the actions of the state agency and to declare that ADWS's past policies and practices are unlawful. The fact that those policies might continue is not enough to make Plaintiff's request prospective." (Doc. 10, p. 7). But Defendant has it exactly wrong—that is precisely the type of relief that *Ex parte Young* entitles Ms. Murguía to seek. To find that the *Ex parte Young* exception permits suit against a state officer in her official capacity, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). In other words, *Ex parte Young* applies where the plaintiff alleges that the state agency has in the past violated, and continues to violate, a federal law and seeks relief that would modify the agency's behavior in the future to end the violation. That is exactly what Ms. Murguía has done here: She alleges that Defendant has violated her rights under the Due Process Clause and has asked the Court to give DWS specific instructions about how it must handle her case going forward so as to respect her due process rights.

7

Nor is the Court concerned that the language of the declaratory judgment Ms. Murguía requests could be construed as retrospective. *See* Doc. 2, p. 30 (seeking a declaratory judgment that "Defendants' actions, policies, procedures, and practices are in violation of Title VI and the Fourteenth Amendment of the U.S. Constitution"). In *Verizon*, the plaintiff "sought injunctive and declaratory relief, alleging that the Commission's order requiring payment of reciprocal compensation was pre-empted by the 1996 Act and an FCC ruling." 535 U.S. at 645. The Supreme Court held that the plaintiff's "prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'" *Id.* The Court acknowledged that the prayer for declaratory relief "seeks a declaration of the *past*, as well as the *future*, ineffectiveness of the Commission's action." *Id.* at 646 (emphasis in original). However, the Court concluded that *Ex parte Young* permitted the plaintiff's suit because "no past liability of the State, or of any of its commissioners, is at issue. It does not impose *upon the State* a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* (cleaned up) (emphasis in original).

Ms. Murguía's procedural due process claim against Defendant does not entitle her to seek money damages, which she recognizes. As such, a finding of retrospective liability as to this claim imposes no past liability on the state. In accordance with *Verizon*, dismissal is not appropriate where, as here, a request for a declaratory judgment is phrased so as to include past practices, but "[i]nsofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." *Id.*

8

at 646. Therefore, Defendant's attempt to invoke sovereign immunity as a defense to Ms. Murguía's Fourteenth Amendment claim is unpersuasive.

Defendant's reliance on *Justice Network, Inc. v. Craighead County*, 931 F.3d 753 (8th Cir. 2019), to argue the contrary is misplaced. The plaintiff in *Justice Network* brought suit pursuant to 42 U.S.C. § 1983 and sought money damages, declaratory judgment, and injunctive relief. The Eighth Circuit first concluded that the defendants, who were state-court judges, were immune from a suit for damages and that § 1983 barred a claim for prospective injunctive relief. Turning to declaratory relief, the Eighth Circuit concluded that the declaratory relief sought would serve only to declare a past violation of the law and not to "define the legal rights and obligations of the parties in anticipation of *some future conduct.*" *Id.* at 764 (emphasis in original). In other words, since prospective injunctive relief was not available, there was nothing forward-looking about the declaratory judgment the plaintiff sought in *Justice Network*.

While Defendant's attempt to invoke sovereign immunity as to Ms. Murguía's federal-law claims is entirely without merit, it does appear to the Court that sovereign immunity may bar her state-law claim. Count Three of the Complaint is premised on the availability of injunctive relief under Arkansas state law to prevent state action that is arbitrary, capricious, in bad faith, or wantonly injurious. Ms. Murguía argues that injunctive relief is therefore available under state law because Defendant lacks a legitimate justification for the delay in determining her eligibility for benefits. In *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), however, the Supreme Court held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment," *id.* at 117, even when the relief sought is prospective injunctive

9

relief that would have been available had the claim rested on federal law, see id. at 104. Nor can supplemental jurisdiction save such claims. See id. at 120–121. Since Defendant did not raise this issue in her briefing, the Court hereby notifies the parties that it will take up at the hearing on March 15, 2021, the question of whether it should sua sponte dismiss Ms. Murguía's state-law claim for lack of subject-matter jurisdiction.

### 2. Administrative Procedure and Exhaustion

Defendant's second argument regarding subject-matter jurisdiction is that this Court cannot review an administrative decision by DWS because Ms. Murguía has not yet received a final adjudication of her UI application and has not exhausted the administrative appeal process. In her initial Brief in Support, Defendant invokes the Administrative Procedure Act—presumably the state and not the federal law, though Defendant does not specify—but Ms. Murguía points out in response that Arkansas Code § 25-15-202(2)(C) expressly excludes DWS from the definition of "agency" under the statute except in specific circumstances not relevant here. In her Reply Brief, Defendant appears to abandon a specific statutory basis for her claim and falls back on "[a] basic rule of administrative procedure" that "an agency be given the opportunity to address a question before a claimant resorts to the courts" and urges that the Complaint be dismissed for failure to exhaust administrative remedies. (Doc. 22, pp. 2–3).

This argument, however, mischaracterizes Ms. Murguía's claims. She is not asking this Court to review a decision by DWS. Her claims cannot be construed as an appeal of a determination by DWS because Ms. Murguía has not been granted or denied benefits. Rather, Ms. Murguía alleges that, in the process of administering the UI and PUA programs generally, Defendant violates federal law by intentionally discriminating

against her and denying her due process by delaying inordinately in determining her eligibility for benefits. These are claims against the manner in which Defendant administers the program, not an appeal of or challenge to a specific agency decision. Ms. Murguía's claims cannot fairly be construed as attempting "to re-argue her unemployment claims in this Court," (Doc. 10, p. 10), and the Administrative Procedures Act (or the general principles of administrative procedure) has no relevance here.

### B. Failure to State a Claim

#### 1. Title VI

Next, Defendant argues that Ms. Murguía has failed to establish that Defendant is intentionally discriminating against her, in violation of Title VI of the Civil Rights Act. Defendant does not lay out the elements of a Title VI claim or specify which element she believes Ms. Murguía has not adequately alleged. Instead, Defendant first argues that Ms. Murguía has failed to state a claim because she listed the wrong employer on her initial UI application. In support of this claim, Defendant attaches as Exhibit A a form titled "Application for Unemployment Insurance Benefits," dated April 8, 2020, that lists Ms. Murguía's last employer as "Molly Maid of Northwest Arkans [sic]." (Doc. 10-1, p. 1). The form has been completed electronically and does not bear any signature. Defendant argues that this document is necessarily embraced by the pleadings because it is the initial UI application that Ms. Murguía completed. Ms. Murguía objects to the consideration of Exhibit A, arguing that it is not embraced by the pleadings because it is offered as evidence to support Defendant's position and contradict the Complaint.

The Court agrees with Ms. Murguía that the proffered attachment must be excluded from consideration in ruling on the Motion to Dismiss. The Eighth Circuit "view[s]

'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003). Exhibit A is clearly offered in opposition to the pleading—as the Eighth Circuit queried, "For what purpose would [the defendant] have provided the documents to the district court, other than to discredit and contradict [the plaintiff's] allegations?" *Id.* at 688. In fact, in her Reply Brief, Defendant explicitly states that "the application [in Exhibit A] is detrimental to Murguía's claim that DWS's employee falsely accused her in listing Molly Maid as the last employer." (Doc. 22, pp. 1–2). Additionally, Exhibit A does not contain sufficient indicia of reliability for the Court to conclude that it is what Defendant claims it is, especially given that it directly contradicts several of Ms. Murguía's factual allegations in the Complaint—namely, that she first filed for unemployment benefits in mid-March and that she listed Holiday Inn as her most recent employer. *See* Doc. 2, ¶ 51. For these reasons, the Court will not consider Exhibit A in ruling on Defendant's Motion to Dismiss.

Defendant's only other argument relevant to the Title VI claim is that Ms. Murguía has not alleged intentional discrimination because "[t]here are no allegations that at the time of submitting her application, Ms. Murguía requested a translator or that her request for translator [sic] was denied." (Doc. 10, p. 3). Rather, Ms. Murguía "authorized her adult daughter to communicate with ADWS on her behalf." *Id.* at 3–4. This argument fails for two reasons. First, it is sufficiently alleged in the Complaint that DWS had an independent duty to make language access services available for applicants with limited proficiency in English because of their national origin. *See, e.g.*, Doc. 2, ¶ 108. More

broadly, however, Defendant's argument fails because it ignores the other components that together Ms. Murguía argues establish a prima facie case of discrimination under Title VI.

In her response to Defendant's Motion, Ms. Murguía acknowledges that Title VI only provides a private right of action for instances of intentional discrimination. However, Ms. Murguía points out that "[w]here there is no direct evidence of discrimination, the plaintiff may rely upon the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Title VII claims" to make a claim for discrimination under Title VI. *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 355 (8th Cir. 2020) (applying *McDonnell Douglas* in analyzing a Title VI claim for discrimination on the basis of race). "To establish a prima facie case of discrimination under Title VI, the plaintiff must show (1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the motive for the discriminatory conduct." *Scarlett v. Sch. of Ozarks, Inc.*, 780 F. Supp. 2d 924, 933–34 (W.D. Mo. 2011). "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision." *Rowles*, 983 F.3d at 355. "If the defendant proffers such a reason, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext for discrimination." *Id.* Additionally, the Eighth Circuit has emphasized that "there is no rigid pleading standard for discrimination cases," and the elements of a prima facie case are merely "part of the background against which a plausibility determination should be made." *Cook v. George's, Inc.*, 952 F.3d 935, 939 (8th Cir. 2020) (cleaned up).

Defendant does not dispute that this is an appropriate framework for the Court to use in analyzing Ms. Murguía's Title VI claim. In fact, though Defendant was granted leave to file a Reply Brief in support of the Motion, the Reply only rehashes Defendant's sovereign immunity and administrative procedure arguments and does not address any of the arguments as to the sufficiency of the pleadings. Despite the lack of substantive briefing from the Defendant on this point, the Court interprets Defendant's argument to be that because Ms. Murguía did not request a translator and brought her daughter to assist her, she has failed to make a plausible claim of discrimination. The Court disagrees.

The Complaint includes sufficient factual allegations to establish a prima facie case of discrimination on the basis of national origin. Specifically, the Complaint alleges that DWS receives federal funding to administer the unemployment benefit programs; DWS workers were hostile to Ms. Murguía because of her identity as a Mexican immigrant and her lack of proficiency in English; DWS failed to abide by its obligation to provide Spanish-language services; Ms. Murguía was questioned about the immigration status of her former coworkers; and DWS has still failed to make a determination as to Ms. Murguía's eligibility for UI because of its belief that Ms. Murguía is undocumented. Since Ms. Murguía has established a prima facie case, the burden now shifts to Defendant to provide a nondiscriminatory reason for its treatment of Ms. Murguía.[1]

---

[1] In her Brief in Opposition, Ms. Murguía argues that deliberate indifference can also satisfy the discriminatory intent requirement, citing *Meagley v. City of Little Rock*, 639 F.3d 384 (8th Cir. 2011). Again, Defendant made no attempt to discuss the elements of a Title VI claim in the initial Brief in Support and did not respond to Ms. Murguía's arguments in the Reply. Nevertheless, the Court is not persuaded that the deliberate indifference standard is appropriate here. *Meagley* involves ADA claims. While the court in *Meagley* does analogize from the Title VI context, it agrees with the district court's

## 2. *Procedural Due Process*

Defendant argues that Ms. Murguía has failed to state a procedural due process claim for the same reasons she failed to state a Title VI claim: Exhibit A establishes that it was Ms. Murguía's own error on her initial UI application, and she chose to rely on her daughter for help and did not request a translator. The Court has already explained why it will exclude Defendant's Exhibit A from consideration as outside the pleadings. Thus, the only question Defendant raises for the Court's resolution is whether Ms. Murguía's failure to affirmatively request a translator means she has failed to state a procedural due process claim under the Fourteenth Amendment.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To establish a procedural due process violation, the plaintiff must show that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was

---

conclusion that "deliberate indifference was the appropriate standard for showing intentional discrimination *in this type of case*" and cites to other cases involving ADA claims. *Id.* at 389 (emphasis added). Other circuit courts have applied the deliberate indifference standard to Title VI claims for race discrimination in the specific context of third-party harassment, analogizing from the Supreme Court's reasoning in dealing with a harassment claim under Title IX in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (holding that "the correct analytical framework for a Title VI student-on-student harassment claim is the deliberate indifference standard"); *see also Zeno v. Pine Plains Centr. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012) ("[I]n the educational setting, a school district is liable for intentional discrimination when it has been "deliberately indifferent" to teacher or peer harassment of a student."). Thus, while the Court finds that the *McDonnell Douglas* framework is applicable and denies the Motion to Dismiss, the Court is not yet persuaded that the law is as clear as Ms. Murguía implies that deliberate indifference is also an appropriate standard for assessing discriminatory intent for Title VI claims in this context.

deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Stevenson v. Blytheville Sch. Dist.*, 800 F.3d 955, 966 (8th Cir. 2015).

Defendant does not provide any substantive briefing on this point. She does not indicate the elements of a procedural due process claim she believes Ms. Murguía must plead and explain how the pleadings are inadequate. Nor does Defendant's Reply Brief address in any way the extensive substantive discussion of the procedural due process claim in Ms. Murguía's Response in Opposition. Specifically, Defendant does not dispute that Ms. Murguía has a property interest in UI or PUA that is protected by the Due Process Clause. Nor does Defendant dispute that the delay in adjudicating Ms. Murguía's application is a constructive deprivation of her interest in such benefits. Defendant argues only that DWS's failure to provide written information in Spanish or to offer Ms. Murguía a translator does not abridge her due process rights.

However, Defendant does not provide any authority to support the assertion that DWS's failure to adhere to federal guidance regarding language access is insufficient to state a claim for a due process violation. In fact, the case law the Court has reviewed suggests the opposite. For example, a district court in Minnesota denied a preliminary injunction for an alleged due process violation where the state agency had a plan in place to provide meaningful language access and there was "no evidence that the [state agency] violated this plan in its communications with [the plaintiff] . . . and, in fact, the [agency's] actions appear to be consistent with the plan." *Awnuh v. Pub. Housing Ag. of City of Saint Paul*, 2019 WL 6492465, at *5 (D. Minn. Dec. 3, 2019); *see also Reyes v. Clarke*, 2019 WL 4044316, at *22 (E.D. Va. Aug. 27, 2019) (holding that the plaintiff "has

stated a viable due process claim" where he alleged that the administrative reviews "were not meaningful" because they were "conducted in English, a language he does not understand").

The Court finds that Ms. Murguía has adequately pleaded that DWS has an affirmative obligation to provide meaningful language access services. As cited in the procedural background section above, the federal Department of Labor requires state UI agencies to translate vital documents into languages spoken by a significant portion of the service population, to provide translation services free of charge, and to identify applicants who might benefit from such services and make known their availability. *See* Dep't of Labor, Emp. & Training Admin., Unemployment Insurance Program Letter No. 02-16, at 8–10 (Oct. 1. 2015). Ms. Murguía alleges, however, that she was never informed of the availability of translation services and that the letters DWS sent to her regarding important aspects of her UI application, such as her initial denial and her appeal rights, were provided only in English. The Court is satisfied that Ms. Murguía has adequately pleaded that DWS has an obligation to meet her language needs that was not absolved by her daughter's presence and that DWS failed to fulfill that obligation.

As the Court noted above, Defendant does not address at all Ms. Murguía's allegation that the agency's unexplained delay in adjudicating Ms. Murguía's second UI application and failure to notify her of her possible eligibility for PUA constitute constructive denial of benefits and a violation of her due process rights. Upon its own review, however, the Court is satisfied that Ms. Murguía's allegations support a procedural due process claim. Ms. Murguía has directed the Court to Eighth Circuit case law recognizing in the context of an administrative claim for worker's compensation, that

"[a]t some point a delay in the opportunity for administrative and judicial review can amount to a denial of due process" and that a delay should be assessed for its reasonableness. *Meehan Seaway Serv. Co. v. Dir., Off. Workers' Comp. Programs*, 125 F.3d 1163, 1170 (8th Cir. 1997). Additionally, in *Mathews*, the Supreme Court emphasized that "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334 (cleaned up). These authorities instruct the Court that the analysis of what process is due under the Fourteenth Amendment is context-specific and fact-dependent. At this stage, the Court accepts as true Ms. Murguía's allegation that she gave the correct information to DWS in March and that the initial denial of her benefits was due to DWS's error, that DWS continued to wait for information from Ms. Murguía's employer long after the response period provided by state law, and that DWS is delaying resolution of her claim while it investigates the immigration status of other Holiday Inn employees. The Court is persuaded that it could reasonably infer from these facts that DWS's delay in processing Ms. Murguía's UI application (a necessary precondition for her to apply for PUA), which far exceeds the 35-day target set by the Secretary of Labor, is unreasonable, and Ms. Murguía has pleaded a violation of her procedural due process rights under the Fourteenth Amendment.[2]

---

[2] Defendant also argues that the Complaint fails to state a claim for a violation of Ms. Murguía's substantive due process rights. However, since Ms. Murguía alleges only a procedural due process claim, the Court does not address this aspect of Defendant's Motion.

### 3. State Law Claim

Finally, Defendant makes no substantive argument as to Ms. Murguía's state law claim. Defendant makes only the general assertion that it fails to provide facts in support and is merely a formulaic recitation of the elements of the cause of action.[3] A review of the Complaint, however, makes clear that Ms. Murguía has put forward facts to support her assertion that Defendant's conduct has been arbitrary, capricious, wantonly injurious, or in bad faith. Since Defendant makes no further argument, and since the Court, as discussed above, is concerned that it does not have subject-matter jurisdiction over Ms. Murguía's state-law claim, the Court will not analyze this claim further. However, should the Court not dismiss the claim on the basis of sovereign immunity, the Court finds that it is adequately pleaded to survive Defendant's Rule 12(b)(6) motion.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendant Charisse Childers's Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS SO ORDERED** on this 2nd day of March, 2021.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] The second paragraph in this section of Defendant's Brief in Support makes an argument about claims pursuant to § 1983 and the Arkansas Civil Rights Act that are not relevant to Ms. Murguía's Complaint and which the Court therefore does not address.