**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**MARÍA MURGUÍA** **PLAINTIFF**

**V.** **CASE NO. 5:20-CV-05221**

**CHARISSE CHILDERS, Director,**
**Arkansas Division of Workforce Services,**
**in her official capacity** **DEFENDANT**

## OPINION AND ORDER

Before the Court are Defendant's Motion to Quash Subpoenas (Doc. 66) and Plaintiff's Response (Doc. 69), as well as Plaintiff's Motion to Extend Discovery (Doc. 64) and Defendant's Response (Doc. 65).

On October 8, 2021, Plaintiff issued a subpoena to [redacted] ("Employee-1") and [redacted] ("Employee-2") to produce certain documents and appear for deposition. Defendant filed a Motion to Quash (Doc. 66) on October 11. The Court quashed the subpoenas, which had set depositions for October 12.[1] The Court did not, however, rule on whether the information sought by the subpoenas duces tecum is discoverable. Instead, it ordered Defendant to provide any related written records for in camera examination.

The Court now finds the testimony and related written records contemplated by the subpoenas to be discoverable. The Court **ORDERS** Defendant to produce the relevant

[1] It is unclear whether the subpoena issued to Employee-2 was properly served. Defendant's Motion to Quash (Doc. 66) attaches only one subpoena, issued to Employee-1, and it appears Plaintiff is unable to locate Employee-2. However, both Defendant and Plaintiff—in its Motion to Extend Discovery (Doc. 64)—reference a second subpoena, issued to Employee-2, and Defendant's Motion requests relief with respect to both subpoenas.

documents and witnesses, as described below, and **GRANTS** Plaintiff's Motion to Extend Discovery. The Court further **ORDERS** Defendant to, first, show cause why it failed to comply with discovery procedures, and second, again search for and produce any responsive records.

## I. BACKGROUND

Plaintiff María Murguía brings a discrimination claim against the Arkansas Division of Workforce Services ("DWS") that alleges the agency failed to timely process her unemployment benefits ("UI") due to racial or national origin animus.

In March or April 2020, Ms. Murguía applied for UI. DWS staff entered her employment history incorrectly, which resulted in denial of her application. Several months later, Ms. Murguía met with DWS employee Raymond Michaud to resolve the error. She contends Mr. Michaud refused to update her file, neglected to provide translation services, and acted with hostility toward her.[2]

Ms. Murguía filed suit on December 18, 2020. (Doc. 2). She cited Mr. Michaud's conduct as evidence of discrimination. During discovery, on May 26, 2021, she requested documents related to Mr. Michaud's employment performance, including any complaints filed against him.[3] DWS produced Mr. Michaud's personnel file, which dates to 2010. *See*

[2] The factual background provided here is limited to the extent necessary to understand the parties' discovery dispute. The reader can find a more comprehensive background in the Court's Memorandum Opinion and Order denying preliminary injunctive relief (Doc. 47).

[3] The relevant Request for Production ("RFP") stated: For all periods of Raymond Richard Michaud's employment with DWS, please produce all documents in Michaud's personnel file and all documents otherwise related to his employment status and performance, including, but not limited to, his employment application(s), resume(s), any signed agreement(s), acknowledgments of receipt and review of DWS policies or other documents, job performance evaluation(s), attendance records, disciplinary records, job

Doc. 69, p. 4. It contained no indication of any complaints. *Id.* That record was inaccurate. During his September 28, 2021 deposition, Mr. Michaud revealed at least two DWS employees—Employee-1 and Employee-2—filed formal complaints against him during his tenure at DWS.[4]

Ms. Murguía contacted DWS on September 29, and October 6, 7, and 8, to obtain more information.[5] On October 8, Ms. Murguía served Employee-1 with a subpoena directing her to appear for deposition on October 12. Ms. Murguía also filed a Motion to Extend Discovery (Doc. 64) that same day.

On October 11, DWS filed its Response to Ms. Murguía's Motion to Extend Discovery (Doc. 65) and a Motion to Quash the Subpoenas (Doc. 66). Ms. Murguía filed a Response to DWS's Motion to Quash (Doc. 69) the following day. The Court granted DWS's Motion to Quash (Doc. 67) on October 12 but ordered DWS to provide any related records to the Court for in camera inspection. On October 15, DWS did so.[6] Employee-1

description(s), job schedules, any records of complaints or grievances made about or against him (whether by DWS employees, benefits claimants, members of the public, or anyone else), resignation or separation documents, and documents relating to any matters alleged in the complaint. (Doc. 69, p. 4).

[4] In all future documents filed in this case, the complainants against Mr. Michaud as discussed in this order shall be referred to as Employee-1 and Employee-2, respectively.

[5] DWS's Counsel states she became aware of the request on October 6, 2021.

[6] DWS provided the Court with three documents: a pdf titled "[Employee-1] Complaint," and two word documents, titled "Rebuttal 9-29-2015" and "Rebuttal 10-9-2015." DWS's Counsel stated she received the two latter documents from Mr. Michaud, who informed her that they "are his records of the responses he submitted to [Employee-1's] complaint in 2015." Email from Maryna Jackson, Arkansas Assistant Att'y Gen., to the Hon. Timothy L. Brooks, J. Chambers (Oct. 15, 2021, 10:47 CST). DWS's Counsel explained that "[f]or some reason, they are not part of the original complaint file" but "Mr. Michaud kept them for his own records." *Id.* These three files do not contain Bates Stamps. To ensure the

additionally submitted records to the Court the same day.[7] The Court thoroughly examined these materials (collectively, the "Employee-1 Complaint"),[8] in addition to relevant law and the parties' briefs.

Below, the Court first rules on the discovery dispute and Ms. Murguía's Motion to Extend Discovery. It then addresses DWS's failure to comply with discovery procedures and issues initial relief.

## II. DISCOVERY DISPUTE

For the below reasons, the Court finds the Employee-1 Complaint is discoverable and will allow Ms. Murguía to depose Employee-1.[9]

---

integrity and completeness of the Court's in camera review, the Court has combined the material into a single file and applied a Bates Stamp: DWS Employee1 0001 to 0027.

With respect to Employee-2, DWS's Counsel informed the Court that DWS "was not able to locate any documents relating to [her] complaint." Email from Maryna Jackson, Arkansas Assistant Att'y Gen., to the Hon. Timothy L. Brooks, J. Chambers (Oct. 15, 2021, 11:15 CST).

[7] Employee-1 is presently employed by a different state agency. On October 15, 2021, the general counsel for the other state agency informed the Court that he is representing Employee-1 for the purpose of responding to the subpoena duces tecum. Email to the Hon. Timothy L. Brooks, J. Chambers (Oct. 15, 2021, 8:57 CST). The general counsel provided the Court with a set of documents from Employee-1 that he characterized as potentially responsive to the subpoena. The Court reviewed those documents in camera, along with those produced by DWS. The Court has Bates stamped these documents as DWS Employee1 0028 to 0101.

[8] The Court notes that some documents provided in Employee-1's production also appear in DWS's production; some do not. Likewise, DWS's production includes some documents not included in Employee-1's production.

[9] As stated, the Court received no records related to Employee-2's complaint, and it is unclear whether a subpoena was properly served. Nevertheless, the Court addresses the discoverability of information Employee-2 may possess at the conclusion of this section.

**A. Legal Standard**

Civil discovery is "liberal in scope." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Under Rule 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information . . . need not be admissible in evidence to be discoverable." *Id.*

Even so, "discovery is not a fishing expedition." *Bielema v. Razorback Found., Inc.*, 2021 WL 50854, at *1 (W.D. Ark. Jan. 6, 2021) (granting in part motion to compel discovery) (citing *Hofer*, 981 F.2d at 380). The requesting party must make some threshold showing of relevancy, *id.*, and "[m]ere speculation that information might be useful will not suffice," *Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 211 (D. S.D. 2018) (quoting *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1217919, at *1 (D. Neb. March 15, 2007)). Instead, "litigants seeking to compel discovery must describe with a reasonable degree of specificity[] the information they hope to obtain and its importance to their case." *Id.* Only then does the burden shift to "the party resisting discovery to explain why [it] should be limited." *Dapron v. Spire, Inc. Ret. Plans Comm.*, 329 F.R.D. 223, 227 (E.D. Mo. 2019).

Even where proposed discovery is relevant, "a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742–43 (8th Cir. 2018). The court's inquiry should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Finally, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This may include "forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters" and "requiring that a deposition be sealed and opened only on court order." Fed. R. Civ. P. 26(1)(D), (F). The Court may even "forbid[] the disclosure or discovery." *Id.* 26(1)(A). "When determining whether to issue a protective order, courts apply a 'balancing test' to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue." *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021).

**B. Discussion**

Ms. Murguía argues the Employee-1 Complaint and/or Employee-1's testimony will help establish Mr. Michaud's discriminatory motive or intent. DWS disagrees, arguing the complaint has no bearing on the present matter. According to DWS, the Employee-1 Complaint concerns remote events that occurred in a different DWS office, and it stems from allegations made by a colleague, not a client of the agency. Ms. Murguía acknowledges the circumstances differ but, she argues, those dissimilarities do not undermine its relevancy. The Court agrees with Ms. Murguía.

Evidence that Mr. Michaud similarly discriminated against other individuals is relevant to this litigation. "To establish a prima facie case of discrimination under Title VI, the plaintiff must show (1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the

motive for the discriminatory conduct." *Scarlett v. Sch. of Ozarks, Inc.*, 780 F. Supp. 2d 924, 933–34 (W.D. Mo. 2011). Under Eighth Circuit precedent, similar discrimination—even though directed to an individual other than the plaintiff—may prove admissible at trial to "illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424–25 (8th Cir. 2017) (quoting *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 155–56 (8th Cir. 1990)); *see also Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1105 (8th Cir. 1988) (finding the district court abused its discretion by barring circumstantial evidence of the employer's discriminatory bias), *overruled in part on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Mr. Michaud's attitudes toward individuals of a different race, color, or national origin are central to this case, and the Employee-1 Complaint provides related evidence. While Employee-1 interacted with Mr. Michaud as an employee—rather than as an UI applicant like Ms. Murguía—the Employee-1 Complaint explicitly discusses treatment of those in Ms. Murguía's position vis-à-vis Mr. Michaud. DWS fails to explain why observations are relevant only when made by the client themselves, rather than a colleague.

Nor does this Court find the Employee-1 Complaint too remote. In *Sallis v. University of Minnesota*, the Eighth Circuit explained that, in employment discrimination litigation discovery, requests for historic company records should be tailored to "encompass a reasonable time period." 408 F.3d 470, 478 (8th Cir. 2005) (internal quotation marks omitted). This is not an employment discrimination case, but in this Court's discretion, a similar principle should govern.

Employee-1 describes behavior that occurred in 2015; Ms. Murguía interacted with Mr. Michaud in 2020. Five years is not an inherently unreasonable length of time. *See, e.g.*, *Bush v. Pioneer Hum. Servs.*, 2010 WL 11682489, at *1 (W.D. Wash. Jan. 8, 2010) (allowing discovery of complaints made against employee dating back ten years because "evidence of prior harassment or discrimination by the alleged harasser is relevant to motive"). Moreover, Mr. Michaud apparently left DWS in March 2016 and rejoined in April 2020. While five years separate the complaints temporally, the gap is much smaller in the context of Mr. Michaud's employment at DWS. The Court also notes DWS already produced Mr. Michaud's personnel file, which dates back eleven years. Yet it now argues the Employee-1 Complaint, filed six years ago, is too remote to be relevant. DWS does not explain why the materials warrant different treatment.

Finally, while the Employee-1 Complaint primarily focuses on sexual harassment allegations, Employee-1 does suggest Mr. Michaud's alleged refusal to consider her for a particular position may have stemmed from some other improper motivation. It appears Employee-1, like Ms. Murguía, is a native Spanish speaker, and it is both reasonable and relevant to probe more deeply into the events she alleges to determine if racial or national origin animus motivated Mr. Michaud's conduct.

DWS next asserts Ms. Murguía's discovery requests are overbroad, burdensome, and not proportional to the needs of discovery in this case. DWS appears to argue that because the Employee-1 Complaint relates only to sexual harassment, it is of little relevance, and thus requiring its production is necessarily disproportional to the needs of the case. But, as explained above, the Employee-1 Complaint is *not* confined to sexual

harassment allegations. It includes claims about Mr. Michaud and the agency's service to Spanish-speaking clients, as well as allegations of hiring discrimination.

DWS lastly argues that requiring Employee-1's participation in this litigation would conflict with the agency's mandate under 29 C.F.R. 38.45 to "keep confidential to the extent possible . . . the identity of any individual who furnishes information relating to, or assists in, an [internal] investigation." But DWS appears to have already disregarded that obligation. Almost immediately after Employee-1 filed her complaint in 2015, DWS staff revealed Employee-1's identity, and to Mr. Michaud no less.

Still, the Court finds Employee-1's privacy interest and desire to avoid further retaliation to represent compelling concerns. But the Court concludes the existing protective order satisfactorily guards Employee-1's interests, and DWS fails to otherwise demonstrate good cause to bar disclosure and/or discovery. Ms. Murguía established the Employee-1 Complaint to be relevant, and DWS produced little to rebut that conclusion.[10]

The Court **ORDERS** DWS to provide Ms. Murguía with immediate access to the Court's Bates stamped version of the Employee-1 Complaint in its entirety. Should she wish to do so, Ms. Murguía may re-notice the subpoena to Employee-1. Ms. Murguía may also, in her discretion, depose Mr. Michaud a second time. With respect to Employee-2, it is the Court's impression that she is no longer employed by DWS. If this is correct, DWS must provide Ms. Murguía with Employee-2's last known contact information. If Employee-2 is in fact still employed by DWS, the agency must cooperate in providing Ms. Murguía a date for deposition.

[10] To be clear, the Court makes no ruling here with respect to admissibility. While the Court finds the Employee-1 Complaint discoverable, that does not dictate its appropriateness for use at trial.

## III. MOTION TO EXTEND DISCOVERY

DWS refutes some of the arguments contained in Ms. Murguía's Motion to Extend Discovery (Doc. 64). But it raises no objection to Ms. Murguía's core request: a two-month extension in discovery and all subsequent deadlines. The Court **GRANTS** Ms. Murguía's Motion; it will reopen and extend discovery by two months. A revised case management order will be issued shortly setting new dates and deadlines.

The Court finds good cause to extend discovery. *See* Fed. R. Civ. P. 16(b)(4) (stating a Rule 16 Scheduling Order "may be modified only for good cause and with the judge's consent"); *see also Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 2021 WL 1176242, at *5 (D. S.D. Mar. 29, 2021) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.")), *appeal dismissed*, 2021 WL 4994465 (8th Cir. June 1, 2021). The Court's decision rests on DWS's failure to either properly produce or object to production of certain documents in response to Ms. Murguía's May 26, 2021 RFPs. The documents withheld by DWS clearly fell within the scope of the RFP. Yet DWS—due to reasons it has yet to articulate—asserted a lack of responsive records. Had DWS properly responded, this dispute would have been resolved months ago, leaving plenty of time remaining on the discovery clock.

## IV. ORDER TO SHOW CAUSE AND AGAIN SEARCH RECORDS

"Complete and accurate responses to discovery are required for the proper functioning of our system of justice." *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 609–10 (D. Neb. 2001). "Parties to civil litigation have a duty to provide true, explicit, responsive,

complete and candid answers to discovery." *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 309 F.R.D. 476, 479 (N.D. Iowa 2015).

DWS did not fulfill its obligations. The records produced in camera fall squarely within Ms. Murguía's earlier RFP, and DWS has not explained the discrepancy. Thus, DWS is **ORDERED** to show cause as to why it failed, first, to produce the Employee-1 Complaint in response to the May 2021 RFP, and second, to supplement its earlier RFP response following Mr. Michaud's deposition admission, *see* Fed. R. Civ. P. 26(e)(1)(A) (requiring a party that responded to a request for production to "supplement its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect").

DWS is further **ORDERED** to again search its records for documents responsive to Ms. Murguía's earlier RFPs. DWS should take care to ensure it produces any information related to Employee-2's complaint against Mr. Michaud.

In DWS's written response to the Show Cause Order, it should describe the procedures it used in both its initial search for responsive materials and this second search. The Court will also require Charisse Childers, in her official capacity as DWS Director, and DWS's counsel Maryna Jackson to each certify under oath that the second search occurred in accordance with the described procedures, the procedures reflect all reasonable steps the agency might take to comply with this Court's Order, and the results of this second search represent all responsive records. *See Wagner*, 208 F.R.D at 609–10 (describing a court's authority to require, with respect to document production requests, "a party to formally verify under oath that either no responsive documents exist,

or if they exist, that all responsive documents have been disclosed"). DWS's written response to this Order is due no later than Tuesday, November 30, 2021.

**IT IS SO ORDERED** on this 17th day of November, 2021.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE