IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARÍA MURGUÍA                                                    PLAINTIFF

v.                          CASE NO. 5:20-CV-05221

CHARISSE CHILDERS, in her official
Capacity as Director of the Arkansas
Division of Workforce Services                                  DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Legal Aid of Arkansas represents Plaintiff María Murguía in this matter. Defendant

Arkansas Division of Workforce Services ("DWS") urges the Court to disqualify Ms.

Murguía's attorneys. After considering DWS's Motion to Disqualify Opposing Counsel and

Request for a Hearing (Doc. 70) and Brief in Support (Doc. 71), Ms. Murguía's Response

(Doc. 74), and DWS's Reply (Doc. 77), the Court finds a hearing unnecessary to resolve

this matter and **DENIES** DWS's Motion (Doc. 70) for the following reasons.

## I.    Background

This case arises out of a claim for unemployment benefits ("UI").[1] When DWS

processed Ms. Murguía's UI application in April 2020, it entered her employment history

incorrectly, causing her claim to be denied. On June 17, 2020, Ms. Murguía appealed the

decision. But, just over a month later, on July 24, Ms. Murguía sent a letter to DWS

withdrawing the appeal. According to Ms. Murguía's Complaint (Doc. 2), she decided to

---

[1] The factual background provided here is limited to the extent necessary to understand
DWS's Motion to Disqualify Opposing Counsel (Doc. 70). The reader can find a more
comprehensive background in the Court's Memorandum Opinion and Order denying
preliminary injunctive relief (Doc. 47).

do so because the appeal notice listed the incorrect employer, and she did not know how to participate in the hearing. *See* Doc. 2, p. 13.

On August 25 and 26, Ms. Murguía met with DWS employee Raymond Michaud to again file for UI benefits. She contends Mr. Michaud refused to update her file, neglected to provide translation services, and acted with hostility toward her.

On September 23, a Legal Aid attorney contacted DWS on Ms. Murguía's behalf. The requisite documentation was provided to DWS to correct the agency's error with respect to Ms. Murguía's employment history.

Ms. Murguía filed suit on December 18, 2020. *See* Doc. 2. She alleges: (1) DWS intentionally discriminated against her as a Spanish-speaking Mexican immigrant, in violation of Title VI of the civil Rights Act, 42 U.S.C. § 2000d; (2) Defendant's failure to provide language access and the delay in accurately assessing her application for unemployment benefits amounts to constructive denial without procedural due process, in violation of the Due Process Clause of the Fourteenth Amendment.[2]

The Court has since taken up a range of motions, including Defendant's Motion to Dismiss (Doc. 9) and Ms. Murguía's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 35). The Court denied Defendant's Motion, finding its assertions—the Court lacked subject matter jurisdiction and the complaint failed to state a claim—to be without merit. *See* Doc. 37. The Court also denied Ms. Murguía's Motion. *See* Doc. 47. After briefing by both parties and an evidentiary hearing, the Court

---

[2] Ms. Murguía's Complaint (Doc. 2) also raised a third claim under state law, but Ms. Murguía dismissed that claim on the record, agreeing with the Court that sovereign immunity bars a claim in federal court for injunctive relief against a state official on the basis of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

concluded that, while Ms. Murguía demonstrated possible merit on both claims, she did not establish an irreparable harm that warranted emergency relief. The parties proceeded to discovery on both the Title VI and Due Process claims. According to Ms. Murguía, DWS failed to provide mandatory interpretation and translation services, and the agency, through Mr. Michaud, mistreated and failed to meaningfully serve her. She contends the alleged discrimination caused emotional harm and delay in adjudication of her UI benefits.

DWS filed the instant motion on October 15, 2021. The agency contends that because it must depose Ms. Murguía's Legal Aid attorneys, disqualification is proper. That argument fails; the underlying premise is flawed. DWS's examination of Legal Aid attorneys is entirely unnecessary under the facts of this case.

## II.   LEGAL STANDARD

The Court subjects motions to disqualify opposing counsel to "particularly strict scrutiny" because "the potential for abuse by opposing counsel is high." *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007). Furthermore, because "[a] party's right to select its own counsel is an important public right and a vital freedom that should be preserved," the Court will take the "extreme measure of disqualifying a party's counsel of choice . . . only when absolutely necessary." *Potter v. Holmes*, 2016 WL 6023488, at *2 (W.D. Ark. Oct. 14, 2016) (quoting *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006)); *see also Rob & Bud's Pizza, LLC v. Papa Murphy's Int'l, Inc.*, 2015 WL 3901611, at *5 (W.D. Ark. June 24, 2015) ("Disqualification . . . is a drastic measure that should only be imposed when it is clearly required by the circumstances." (quoting *Wal-Mart Stores, Inc. v. Vidalakis*, 2007 WL 4468688, at *1 (W.D. Ark. Dec. 17, 2007))).

3

In DWS's Motion to Disqualify Opposing Counsel (Doc. 71), the agency cites Arkansas Rule of Professional Conduct 3.7, which provides: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless" the lawyer's "testimony relates to an uncontested issue . . . [or] to the nature and value of legal services rendered in the case," or "disqualification of the lawyer would work substantial hardship on the client." Ark. R. Prof'l Conduct 3.7. The Arkansas Supreme Court considers an attorney a necessary witness at trial where the following three prongs are satisfied: (1) the attorney's testimony is material to the determination of the issues being litigated; (2) the evidence is unobtainable elsewhere; and (3) the testimony is or may be prejudicial to the testifying attorney's client. *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 625 (2004).

## III.   DISCUSSION

Below, the Court considers whether the testimony DWS proposes to elicit would likely render Ms. Murguía's attorneys necessary witnesses under the *Weigel* test. The Court finds, based on the existing record, DWS has not carried its burden.

### A.  Legal Aid's Conduct as Causation

DWS's Motion to Disqualify (Doc. 71) is primarily driven by a defense the agency anticipates raising at trial. DWS contends Legal Aid made a series of strategic decisions in its representation of Ms. Murguía that hindered resolution of her UI claim. According to DWS, even if discrimination by DWS employees did in fact occur, that conduct is not responsible for the delay in proceedings.

DWS intends to argue Ms. Murguía's decision to withdraw her appeal in July 2020 caused the subsequent delay in adjudication. It asserts Ms. Murguía's letter to DWS on

July 24, 2020 ("July 24 Letter" or "Letter") will provide important evidence at trial, and DWS intends to elicit testimony evincing the Letter's existence, its impact on Ms. Murguía's UI claim, and the reasons for sending it. However, according to DWS, questioning Ms. Murguía is a fruitless endeavor because she neither personally prepared the July 24 Letter nor meaningfully participated in the decision to send it. Thus, the agency argues, it must have the opportunity to cross-examine the attorney who prepared it.

The Court does not dispute the potential relevancy of Ms. Murguía's decision to withdraw her appeal or the July 24 Letter itself. But DWS fails to identify testimony on this topic that is at once material, obtainable only from Legal Aid attorneys, and prejudicial to Ms. Murguía.

There is no dispute that Ms. Murguía sent the July 24 Letter; she testified in a deposition she faxed it to DWS. (Doc. 71-1, p. 71). With respect to the Letter's impact, it would seem DWS's own staff could testify to its effect, including whether it caused further delay. The parties also agree Legal Aid participated in the preparation of the Letter; Legal Aid stipulated on the record to assisting Ms. Murguía, (Doc. 71-1, pp. 78–79).

DWS refutes the scope of Legal Aid's assistance. The agency alleges Legal Aid attorneys did more than merely participate; they entirely drafted the letter. But DWS does not establish Legal Aid testimony to be either material or unobtainable from another source.[3] The agency fails to explain why Ms. Murguía's own testimony is inadequate to show her participation—or lack thereof—in the Letter's preparation.

---

[3] Because *Weigel* requires the moving party to establish all three prongs, the Court has no occasion to progress to the third—prejudice to the testifying attorney's client.

Moreover, the Court struggles to understand DWS's objection. The drafter's identity has no apparent bearing on the Letter's legal significance. It is well established that "a party is responsible for the actions and conduct of his or her counsel." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) (cleaned up). The Letter effectively withdrew Ms. Murguía's appeal, and she is bound by that decision. Legal Aid serves as Ms. Murguía's agent, and the strategic choices it makes in that capacity are attributed to Ms. Murguía. While an attorney has an obligation to consult with his or her client, that does not "require counsel to obtain the defendant's consent to every tactical decision." *Fla. v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks omitted).

DWS's motion suggests the reason *why* Ms. Murguía withdrew her appeal—not simply that she did so, or even that she did so on Legal Aid's instruction and without meaningful consultation—is the material testimony that it seeks to elicit. But the agency neglects to explain how the underlying reasoning relates to the question of whether the decision itself caused a delay. The Court can discern neither the relevance of the proposition DWS seeks to establish nor the materiality of Legal Aid's testimony to it.

DWS also argues it must examine Legal Aid attorneys or staff to confirm that Legal Aid communicated with Ms. Murguía in Spanish, because "[i]f Legal Aid's attorneys/staff testify that interpreters were available to Ms. Murguía, such testimony will impeach Ms. Murguía's sworn statements in her declaration where she stated, under oath, that she withdrew her appeal because she 'did not know how participate in the hearing since [she] didn't speak English.'" (Doc. 71, pp. 13–14). Ms. Murguía has already testified that at least one Legal Aid staff person spoke fluent Spanish and helped to facilitate

6

communication. (Doc. 71-1, pp. 62, 70). It is unnecessary for Legal Aid staff to testify to the same fact.

DWS next argues: (1) the gap in time between when Ms. Murguía withdrew her appeal on July 24 and submitted her paychecks to DWS, via her attorneys, on September 23 further delayed adjudication; and (2) Legal Aid failed to provide prompt notice that Ms. Murguía visited the Fayetteville location in August 2020 and the DWS employee present refused to update her file, presumably causing further delay. The timeline regarding Legal Aid's communication with DWS seems relatively clear and is established by evidence already in the record. DWS does not identify additional testimony, material to the issues to be litigated, that it believes only Legal Aid attorneys could provide. At bottom, Ms. Murguía is the responsible party plaintiff, regardless of whether her attorneys' actions or omissions prove advantageous or harmful to her position in the litigation. Thus, the Court cannot find Legal Aid attorneys to constitute necessary witnesses under *Weigel*.

### B. Ms. Murguía's Declaration

DWS alleges serious inconsistencies in Ms. Murguía's various recitations of her claim. In particular, it cites differences between Ms. Murguía's declaration (Doc. 35-1) and her deposition testimony (Doc. 71-1), and the agency contends that Ms. Murguía's inability to recall details about the declaration's drafting and execution suggests that her attorneys drafted the document. Again, of what significance?

DWS does not demonstrate why the document's preparation itself is material to the issues in this litigation. To the extent DWS intends instead to call into question Ms. Murguía's description of the events at issue, presumably the agency may, where

7

appropriate, impeach her testimony at trial with reference to the aforementioned inconsistencies.

### C.  Forms Submitted to DWS

DWS levies a similar argument with respect to some of the forms submitted to DWS in relation to Ms. Murguía's UI claim. During her declaration, Ms. Murguía testified she did not remember signing some of these documents. DWS contends Legal Aid prepared and submitted them on her behalf. Again, that might be so, but it is unclear what conclusion DWS intends the Court to draw here. The forms themselves seem arguably relevant, but DWS's staff could presumably authenticate and testify to their contents. There is no allegation the documents misrepresent the circumstances surrounding Ms. Murguía's claim, mislead the agency, or further delayed the proceedings. Moreover, a party's lack of memory does not generally open the door to calling their attorney as a witness.

### D.  Legal Aid Intern as a Witness

Finally, Legal Aid identified its former intern as a possible witness to testify to the authenticity of Facebook posts made by non-parties. DWS argues it should be allowed to question this individual at trial. Neither the Court nor Legal Aid disputes that. However, DWS also argues it should also be allowed to cross-examine other Legal Aid staff or attorneys about the materials' authenticity. Again, DWS does not identify any additional testimony or evidence material to its case that it cannot obtain from the individual identified by Legal Aid or the existing record.

## IV.    CONCLUSION

DWS's Motion is **DENIED. IT IS SO ORDERED** on this 25th day of January, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE